UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTROVERSY MUSIC, HIDEOUT
RECORDS AND DISTRIBUTORS, INC.
(GEAR PUBLISHING DIVISION),
JOBETE MUSIC CO., INC., EMI APRIL
MUSIC INC. and FRANK MUSIC CORP.,

     Plaintiffs,

v.                                                   Case No. 10-cv-12015
                                                   Paul D. Borman
                                                   United States District Judge

PACKARD GRILL, LLC and
CHARLES A. SHALHOUB,

     Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

     This is a copyright infringement case. The Plaintiffs are various record companies: Controversy Music, Hideout Records and Distributors, Inc. (Gear Publishing Division), Jobete Music Co., Inc., EMI April Music Inc., and Frank Music Corp. Plaintiffs claim that the Packard Grill, LLC, and its managing member, Charles A. Shalhoub (collectively, "Defendants"), intentionally infringed their copyrights by playing certain musical compositions at the Plaintiffs' restaurant and bar without a licensing agreement.

     Plaintiffs filed their Complaint on May 19, 2010 (Dkt. No. 1]. A certificate of service was returned for both Defendants on May 25, 2010 (Dkt. Nos. 4 and 5). Defendants did not file an answer or a motion to dismiss under Rule 12. Plaintiffs requested and received an entry of

default on June 28, 2010 (Dkt. Nos. 6 and 7). Plaintiffs filed the instant Motion for Default Judgment on September 9, 2010 (Dkt. No. 8). Defendants responded on September 29, 2010 (Dkt. No. 11), and Plaintiffs replied on October 13, 2010 (Dkt. No. 12).

At oral argument on January 13, 2011, Defendants appeared with an attorney, Thomas Elkins. Although Mr. Elkins argued on Defendants' behalf at the hearing, he did not file an appearance with this Court.

For the reasons that follow, the Court will grant Plaintiffs Motion for Default Judgment.

## I. BACKGROUND

A default has been entered in this case and all Plaintiffs' well-pleaded allegations are deemed admitted by Defendants. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 846 (E.D. Mich. 2006).

Defendants own and manage a restaurant and bar called the "Packard Grill," which offered live karaoke in 2008 and 2009. Plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP"), an organization that licenses the use of members' copyrighted songs and investigates possible infringement activities. Each Plaintiff owns a copyright to a musical composition that was publicly performed without permission at the Packard Grill. There are five specific allegations of infringement, which took place on March 7, 2009, and March 8, 2009.

Between January and May of 2008, ASCAP contacted Defendants multiple times by letter, phone, and in person, regarding a licensing agreement. On each occasion, Defendant Charles Shalhoub either denied ASCAP's request or refused to respond. Notably, on two occasions Defendant Shalhoub dared ASCAP's representatives to take legal action. On May 20,

2008, Defendant Shalhoub told one ASCAP representative, Gene Meldrum, to "go ahead and go legal" after refusing the licensing agreement. (Decl. of Douglas Jones Ex. 1 - ASCAP File) (Dkt. No. 9). Later that day, Defendant Shalhoub called Meldrum and told him he would be thrown out if he ever returned to the Packard Grill. (ASCAP File). On May 21, 2008, ASCAP representative Dean DeMeritt called Defendant Shalhoub to once again explain the purpose of ASCAP's licensing agreement. (ASCAP File). Defendant Shalhoub stated that he would not accept the licensing agreement and "invited a lawsuit."

In his *pro se* Response[1], Defendant Shaloub states that he thought ASCAP's licensing requests were "a scam," and that he "did not think we needed a license to play music." (Defs.' Resp. ¶ 3). Nevertheless, each of the six letters ASCAP sent to Defendant Shaloub between January 30, 2008, and September 22, 2009, invited Defendant Shaloub to contact ASCAP if he had any questions regarding the licensing agreement, and included the address of ASCAP's office in Atlanta, Georgia, as well as a phone number for ASCAP and the organization's website, www.ascap.com. (ASCAP File). Given that this lawsuit was not filed until May 2010, Defendant Shaloub had ample time to investigate ASCAP and discern that its licensing agreements are not "scams."

ASCAP did not initiate its investigation until February 27, 2009, after more than a year of attempted negotiations with Defendants. An ASCAP investigator observed live karaoke at the Packard Pub on March 7 and 8, 2009, and documented the five specific instances of infringement

---

[1] The Court notes that the issues and defenses raised by Defendant Shaloub's *pro se* Response do not apply to Defendant Packard Grill, LLC, because it is a corporate entity and must be represented by an attorney. *See generally Rowland v. California Men's Colony*, 506 U.S. 194 (1993).

at issue. ASCAP again contacted Defendants by letter on September 22, 2009, informing them of the investigation and offering a license and settlement agreement. However, Defendants did not enter into a licensing agreement with ASCAP until sometime in March 2010, after being contacted by Plaintiffs' counsel in this case. (Defs.' Resp. Ex. 1 - 2010 Contract; Pls.' Mot. Ex. D - Decl. of Brian D. Wassom). Plaintiffs' admit that the ASCAP agreement is prospective only and covers a period beginning in January 2010, and that it does not cover the infringing incidents at issue. (Pls.' Resp. ¶¶ 6 and 7).

## II. DISCUSSION

### A. Defendants' Response

As an initial matter, the Court will address Defendant Shaloub's *pro se* Response.

Defendant Shaloub contends that he did not know he was infringing when he allowed copyrighted songs to be played at the Packard Grill on karaoke nights. Even if this was a valid defense to Plaintiffs' claims of direct copyright infringement[2], the facts indicate otherwise. Defendants were initially contacted by ASCAP in January 2008, and were further contacted multiple times thereafter. Defendant Shaloub does not deny that any of these previous contacts actually occurred, or that he did not understand the purpose of ASCAP's numerous letters, phone calls and in-person conversations. Claiming he was not aware that he might be infringing on Plaintiffs' copyrights by March 2009 is disingenuous. Indeed, it appears that the March 2009 infringements were simply one portion of a continuing pattern of willful copyright violations that carried on throughout 2008 and 2009.

---

[2] While contributory copyright infringement requires proof that the defendant knew he was infringing, direct copyright infringement claims do not. *See NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807, 814, 816 (6th Cir. 2008).

Defendant Shaloub also argues that Plaintiffs' counsel agreed to "work with [Shaloub] for [his] obligation to 2008 and 2009." (Defs.' Resp. ¶ 6). Defendant Shaloub claims that he therefore believed that he did "not have to resume further other than to work out a payment plan." (Defs.' Resp. ¶ 8). Defendant further states:

> Therefore, I relied upon [Plaintiffs' counsel's] representation that he would work with me to render the $2,376 I owe for 2008 and 2009 and that I didn't have to hire an attorney and take further action.

(Defs.' Resp. ¶ 13). Defendant requests 30 days to retain counsel and answer Plaintiffs' Complaint. (Defs.' Resp. ¶ 12).

The Court construes Defendant Shaloub's above allegations as a motion to set aside the entry of default under Federal Rule of Civil Procedure 55(c). This Rule allows the Court to set aside entry of a default upon Defendants' showing of "good cause." In determining "good cause," the Court considers three factors: "(1) [w]hether culpable conduct of the defendant led to the default, (2) [w]hether the defendant has a meritorious defense, and (3) [w]hether the plaintiff will be prejudiced." *Waifersong, Ltd. Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). The Court finds that, on balance, these factors weigh against setting aside the default in this case. Accordingly, to the extent Defendants' Response raises a motion to set aside the default, the Court will deny that motion.

First, the Defendants are culpable for the default in this case because they failed to answer Plaintiffs' Complaint. To the extent Defendant Shaloub argues that his failure to respond was the result of continuing negotiations with Plaintiffs' counsel, the Court is not persuaded that he was mislead. The Summons issued to Defendant Shaloub unambiguously informed him of the consequences of not filing an Answer:

5

> Within 21 days after service of this summons on you . . . you must
> serve on the plaintiff an answer to the attached complaint or a
> motion under Rule 12 of the Federal Rules of Civil Procedure.
>
> . . .
>
> If you fail to respond, judgment by default may be entered against
> you for the relief demanded in the complaint.

Summons (Dkt. No. 3). Defendant Shaloub's claim that he believed he had sufficiently responded to the Complaint by contacting Plaintiffs' counsel (Defs.' Resp. ¶ 11) is also unavailing, as the Summons states, "You also must file your answer or motion with the court." This language "cannot be made any clearer." *Cass County Music Co. v. Kobasic*, 635 F.Supp. 7, 8 (W.D. Mich. 1984) (rejecting the argument that a default should be set aside because plaintiff did not understand the language in the summons). A default was entered in this case due to Defendants' inaction. They are therefore culpable inasmuch as they ignored the clear language of the Summons.

Secondly, Defendants have not claimed any meritorious defense. In considering whether a defendant has raised a meritorious defense, "[t]he key consideration is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Smith v. Comm'r of Internal Revenue*, 926 F.2d 1470, 1480 (6th Cir. 1991) (citation omitted). Defendants' Response actually admits that Plaintiffs have a right to be paid for the 2009 infringements and that Defendants agreed to pay them. (Defs.' Resp. ¶ 5). Rather than presenting a meritorious defense to Plaintiffs' claim, Defendant Shaloub merely states that he did not believe Plaintiffs' counsel would take further action after serving him with the Complaint. Under these circumstances, the Court will not set aside the default and allow Defendants to file an Answer. Allowing Defendants to do so in a case where they have

presented no meritorious defense and admit their liability to Plaintiffs would simply add unnecessary costs to the litigation. *Smith*, 926 F.2d at 1480 (holding that "the court may refuse to set aside a default, where the defaulting party has no meritorious defense, where the default is due to willfulness or bad faith, or where the defendant offers no excuse at all for the default.").

Thirdly, Plaintiffs waited until May 2010 to bring this action for violations that occurred in March 2009. After the entry of default, Plaintiffs waited an additional two months before bringing the instant Motion for Default Judgment. Additional delays will result in unnecessary expense and would prejudice the Plaintiffs. Moreover, setting aside the default would also result in unnecessary expense to the Defendants, who would need to hire counsel and incur legal fees in a case for which they have no meritorious defense.

Accordingly, to the extent Defendant Shaloub has raised a motion under Rule 55(c), that motion is denied.

### B.  Statutory Damages

Plaintiffs move for default judgment based the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c)(1), which states:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action . . . for which any two or more infringers are liable jointly and severally, in a sum not less than $750 or more than $30,000 as the court considers just.

The Court has broad discretion in determining the appropriate measure of damages within this range. *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231-32 (1952). The statutory provision not only compels restitution, "but also is designed to discourage wrongful conduct." *Id*. at 233. "Even for uninjurious and unprofitable invasions of copyright the court may, if it

deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id*.

Plaintiffs claim that, had the Packard Grill been properly licensed from January 1, 2008 to the actual licensing period beginning January 15, 2010, Defendants would have owed approximately $2,370. (Decl. of Douglas Jones ¶ 13). Defendant Shaloub admits that he agreed to pay $1,250 for each of 2008 and 2009. (Defs.' Resp. ¶ 9). The Court finds that an appropriate award of statutory damages in this case is $600 for each claim of infringement, or $3,000 total.

### C. Costs and Attorney's Fees

Plaintiffs request their costs and attorney's fees pursuant to 17 U.S.C. § 505, which states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

In determining whether a prevailing plaintiff is entitled to attorney's fees under this provision of the Copyright Act, the Court considers several nonexclusive factors, commonly referred to as the "*Fogerty*[3] factors," which are: "frivolousness, motivation, objective unreasonableness (factual and legal), and the need to advance considerations of compensation and deterrence." *Jones v. Blige*, 558 F.3d 485, 494 (6th Cir 2009) (citation omitted). "The grant of fees and costs is the rule rather than the exception and they should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citation and punctuation omitted).

These factors do not weigh in Defendants' favor. As noted *supra* in Part A, Defendants

---

[3]The factors first appeared in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994).

have raised no meritorious defense in this case. In fact, Defendants admit that they owe Plaintiffs for the costs of licenses in 2008 and 2009. (Defs.' Resp. ¶ 5). Their refusal to pay these licensing fees was the impetus for this lawsuit. Defendant Shaloub even invited the lawsuit by daring the ASCAP representatives to sue him. The facts before the Court indicate that Defendants have realized their liability for some time, and their repeated refusals to pay the licensing fees they owe caused the filing of this lawsuit. Therefore, the Court finds that an award of attorney's fees is appropriate in this case. *See Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 589 (6th Cir. 2007) (finding award of attorney's fees was justified "given the unreasonableness of [defendant's] positions and the need to deter such conduct[.]").

"In determining reasonable attorneys fees, the court begins its calculation by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Princeton Univ. Press, MacMilan, Inc. v. Mich. Document Serv. Inc.*, 869 F.Supp. 521, 522 (E.D. Mich. 1994). In determining a reasonable fee, the Court considers "the time and labor required, the novelty and difficulty of the litigation, and the experience, reputation and ability of the attorneys." *Id*. at 523.

Plaintiffs request $4,550 in attorneys' fees and $448.88 in costs, and have included an affidavit and billing statement as proof of these fees. (Pls.' Mot. Ex. D). Plaintiffs' billing statement shows that Plaintiffs' counsel, Brian D. Wassom, a partner at his firm, expended 13 hours on this litigation[4] with a billable rate of $350 per hour. (Pls.' Mot. Ex. D). Although Mr.

---

[4]The Court notes that much of Mr. Wassom's time – approximately five to six billable hours – was expended on what he describes as "settlement negotiations." This supports the claims by both parties that Plaintiffs' counsel had been negotiating for some time with Defendant Shaloub before filing the Complaint and the instant Motion for Default Judgment. (Pls.' Mot. Ex. D).

9

Wassom is a very experienced and reputable attorney, given the relative lack of difficulty in this litigation, the Court finds that a reasonable attorneys' fee for Mr. Wassom would be $330 per hour, for a total of $4,290 for this case. *See Fharmacy Records v. Nassar*, --- F.3d ----, 2010 WL 2898793 (E.D. Mich. 2010) (finding that a reasonable hourly rate for services rendered by partner-level practitioners in an intellectual property case was $330).

Plaintiffs also request $448.88 in costs. Plaintiffs' request includes $36.78 for legal research. However, this cost is "part of the overhead expense which is customarily considered in establishing an hourly rate for attorney time." *Fharmacy Records*, 2010 WL 2898793 at *24. Accordingly, the Court will not allow recovery for this amount. Plaintiffs are, however, entitled to the recovery of their remaining costs of $412.10 that were incurred in this litigation.

In summary, pursuant to 17 U.S.C. § 505, Plaintiffs are entitled to $4,290 in attorney's fees and $412.10 in associated costs.

### III. CONCLUSION

For the reasons stated above, the Court will:

(1) **GRANT** Plaintiffs' Motion for Default Judgment, and

(2) **ORDER** that judgement be entered in favor of Plaintiffs and against Defendants in the amount of $3,000, including attorneys' fees in the amount of $4,290, and associated costs in the amount of $412.10. It is further **ORDERED** that the assets subject to execution in the collection of this judgment shall include alcohol, subject to the approval of the Michigan Liquor Control Commission.

This is a final order and closes the case.

**SO ORDERED.**

                          S/Paul D. Borman
                          PAUL D. BORMAN
                          UNITED STATES DISTRICT JUDGE

Dated: February 1, 2011

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 1, 2011.

                          S/Denise Goodine
                          Case Manager